SANDEEP SETH (SBN 195914)
ss@sethlaw.com
SETH LAW OFFICES
Two Allen Center
1200 Smith Street, Suite 1600
Houston, Texas 77002
Telephone No.: (713) 244-5017
Facsimile No.: (713) 244-5018

ROBERT J. YORIO (SBN 93178)
yorio@carrferrell.com
CARR & FERRELL LLP
120 Constitution Drive
Menlo Park, California 94025
Telephone No.: (650) 812-3400
Facsimile No.: (650) 812-3444

Plaintiff SENTIUS INTERNATIONAL, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| SENTIUS INTERNATIONAL, LLC,<br><br>                     Plaintiff,<br><br>          v.<br><br>APPLE INC.,<br>                     Defendant. | **CASE NO. 4:20-cv-00477-YGR**<br><br>**PLAINTIFF SENTIUS INTERNATIONAL, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing Date:   May 19, 2020<br>Hearing Time:  2:00 pm<br>Courtroom:    1, 4th Floor<br>Judge:        Hon. Yvonne Gonzalez Rogers<br>Second Amended Complaint Filed: March 26, 2020 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I.     INTRODUCTION ..........................................................................................................1

II.    FACTUAL BACKGROUND AND THE LG MOTIONS ...........................................1

III.   LEGAL STANDARD ...................................................................................................4

       A.    Sufficiency of Pleadings ...................................................................................4

       B.    Direct Infringement Liability for a Method Claim ..........................................4

       C.    Joint Infringement .............................................................................................6

       D.    Leave to Amend ................................................................................................7

IV.    ARGUMENT .................................................................................................................8

       A.    The Second Amended Complaint States a Valid Claim for Direct
             Infringement of the Method Claims of the '633 Patent. ...................................8

       B.    Sentius Has Alternatively Stated Valid Claims for Joint or Divided
             Infringement of the Method Claims of the '633 and '985 Patent. ..................12

             1.    The SAC Contains Allegations of Fact That Are Consistent with
                   Federal Circuit Law..............................................................................12

             2.    Plaintiff Has Sufficiently Pled Facts Identifying the Manner of Interaction
                   Between Apple and its Customers. .......................................................14

             3.    The Delaware Court's Decision Supports the Sufficiency of the SAC. ...........15

             4.    If the Court Determines that Additional Facts Need to Be Alleged,
                   Leave to Amend Should Be Granted .....................................................22

V.     CONCLUSION ............................................................................................................22

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc)....................................................passim

*Ashcroft v. Iqbal,*
556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .................................4, 5

*Bell Atlantic Corp. v. Twombly,*
550, U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................4, 5

*Blackbird Technologies v. Uber Technologies, Inc.,*
2020 U.S. Dist. LEXIS 1310 at *22 (D. Del. January 6, 2020) ...................................15

*Coleman v. Quaker Oats Co.,*
232 F.3d 1271, 1294 (9th Cir. 2000).............................................................................8

*Confident Techs., Inc. v. Fandango Media,*
*LLC,* 2018 WL 6430539 at *4 (C.D. Cal. August 20, 2018) .......................................21

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*
845 F. 3d 1357, 1363 (Fed. Cir. 2017).....................................................................6, 13

*Eminence Capital, LLC v. Aspeon, Inc.,*
316 F.3d 1048, 1052 (9th Cir. 2009).............................................................................8

*Ericsson, Inc. v. D-Link Systems,*
773 F. 3d 1201, 1222 (Fed. Cir. 2014).........................................................9, 10, 11, 12

*Foman v. Davis,*
371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) .....................................................8

*Hall v. Bed Bath & Beyond, Inc.,*
705 F.3d 1357, 1362 (Fed. Cir. 2013)...........................................................................4

*In re Bill of Lading Transmission & Processing Sys. Patent Litigation,*
681 F.3d 1323, 1335 (Fed. Cir. 2012)...........................................................................4

*Ioengine, LLC v. Paypal Holdings, Inc.,*
2019 U.S. Dist. LEXIS 12195, *7, 2019 WL 330515 (D. Del. January 25, 2019)........13

*Lopez v. Smith,*
203 F. 3d 1122, 1127 (9th Cir. 2000).............................................................................8

*Lyda v. CBS Corp.,*
838 F. 3d 1331 (Fed. Cir. 2016)...............................................................14, 15, 21, 22

*Mankes v. Vivid Seats, Ltd.,*
822 F. 3d 1302, 1305 (Fed. Cir. 2016)...........................................................................7

*Nalco Co. v. Chem-Mod, LLC,*
883 F. 3d 1337, 1347 (Fed. Cir. 2018)............................................................4, 7, 13, 15

*Nayab v. Capital One Bank (USA), N.A.,*
942 F. 3d 480, 496 (9th Cir. 2019)................................................................................4

*Ormco Corp. v. Align Tech., Inc.,*
463 F. 3d 1299, 1311 (Fed. Cir. 2006)...........................................................................5

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Pragmatis AV, LLC v. TangoMe, Inc.,*
  2013 U.S. Dist. LEXIS 19075 at *14-16 (D. Del. Feb. 13, 2013) ...................................................15

*SiRF Tech., Inc. v. ITC,*
  601 F.3d 1319, 1329 (Fed. Cir. 2010)........................................................................5, 10, 11

*Space Data Corp. v. X,*
  No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 109842, at *8 (N.D. Cal. July 14, 2017) ..................8

*Travel Sentry, Inc. v. Tropp,*
  877 F.3d 1370, 1381 (Fed. Cir. 2017)......................................................................7, 13, 15

*United States v. Dang,*
  488 F.3d 1135, 1143 (9th Cir. 2007)...........................................................................8

*Windy City Innovations, LLC v. Microsoft Corporation,*
  193 F. Supp. 3d 1109, 1112 (N.D. Cal. 2016) .............................................................4, 5, 6

*WiNet Labs LLC v. Apple, Inc.,*
  No. 5:19-cv-2248- EJD, 2020 WL 409012, at * 6 (N.D. Cal. January 24, 2020) .............8, 10, 11, 22


**Statutes**

35 U.S.C. § 271(a) ...........................................................................................6


**Rules**

Fed. R. Civ. P. 12(b)(6)......................................................................................4, 7

Fed. R. Civ. Proc. 15 ...........................................................................................8

Federal Rule of Civil Procedure 6(d) .............................................................................1

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 6(d) and the Local Rules of this Court, Plaintiff, Sentius International LLC ("Sentius") hereby submits this Memorandum of Point and Authorities in Opposition to Defendant Apple Inc.'s ("Apple") Partial Motion to Dismiss Second Amended Complaint for Patent Infringement (Dkt. 41) (the "SAC") as follows:

## I.       INTRODUCTION

The Partial Motion to Dismiss filed by Defendants Apple Inc. ("Apple") is deficient in all respects and should be denied. Plaintiff Sentius has stated a valid claim for direct infringement by Apple of the method claims of the '633 Patent because Apple, and not the Apple customer, performs each of those claims. Plaintiff has also alternatively pled a claim for direct infringement of the '633 and '985 Patents on a joint or divided infringement theory with respect to part of a single step in the method claims (e.g. selecting a discrete portion of an image of the textual source material in the '633 Patent). Those allegations are set forth in Paragraphs 50 and 70 of the SAC and are completely consistent with governing Federal Circuit law on this issue.

## II.      FACTUAL BACKGROUND AND THE LG MOTIONS

Sentius developed the technology of the patents-in-suit in the Bay Area when it built and commercialized its Mikan and RichLink suite of products.  Apple was a valued customer at the time. Sentius is a small company, at its zenith it did not exceed 100 employees.  It did however enjoy a modicum of success and recognition for developing the technology of the Patents-in-Suit.  The '633 Patent is directed to technology that improved word processing technology by providing a way for word processing applications to quickly and efficiently link words in an electronic document to corresponding external reference materials and to display such materials in a pop-up window in response to a user input.  The '985 Patent is directed to a network of linking engines that use syndicated content to link words to corresponding reference material for display.  After Sentius ceased its commercial business as a start-up in the internet bubble collapse in the early 2000s, it has licensed its word processing linking technology to a number of companies including Microsoft, Corel, IBM and Oracle, who have all used the technology in providing substantially identical spell check and  grammar check engines to their word processing programs.

Since 2016, Sentius has been engaged with its former customer, Apple, in licensing

negotiations related to the '633 and '985 Patents to cover its red-squiggly spell check feature (and grammar check feature) used in its word processing applications, just as Microsoft, IBM, Corel and Oracle have done to cover the red-squiggly spell check feature used in their word processing applications. Yorio Decl. ¶ 3. To this end, Sentius has written to Apple, met with Apple on occasion, addressed Apple's arguments of non-infringement and invalidity, and engaged in good faith licensing negotiations with Apple. Yorio Decl. ¶ 4. This effort has been substantial and continuous since 2016. Only when it was clear that no other option existed, did Sentius sue Apple. Since initiating the suit, Sentius has stipulated to the transfer of this case from the District of Delaware to this Court and stipulated to two amendments of its Complaint in an effort to appease Apple and proceed to the substantive merits of the lawsuit.

Apple has also given short shrift to nearly identical motions to dismiss filed by LG Electronics U.S.A. and LG Electronics, Inc. in a related action in Delaware. For example, when Apple's counsel first wrote to Sentius counsel on October 10, 2019, Sentius had already filed its Answering Brief in Opposition to the LG Defendants' Third Motion to Dismiss. (Dkt. 32). Yorio Decl. ¶ 9. This LG Motion sought to dismiss the joint infringement claims alternatively pled by the Sentius in its Second Amended Complaint against the LG defendants. (Dkt. 30). Yorio Decl. ¶ 9 and Exhibit 3 thereto. Since the same issues on direct infringement and joint or divided infringement had either already been ruled upon by the Delaware Court (on direct infringement, See Dkt. 18 and 24. Yorio Decl.¶¶ 5-7 Exhibits 1 and 2) or were in the final reply stage of briefing (joint or divided infringement, See Dkt. 26 and 30, Yorio Decl. ¶¶ 8-9 and Exhibit 3), it made sense for Sentius and Apple to allow the Delaware Court to rule on the third LG Motion before Sentius filed an amended pleading or Apple filed a motion to dismiss. Yorio Decl. ¶ 9. By agreement, Apple's time to respond to the Sentius Complaint was extended to November 22, 2019 (Dkt. 8) and later to 21 days after the Delaware Court ruled on the LG Motion.  (Dkt. 9). Yorio Decl. ¶ 10 and Exhibit 4. The second Stipulation tied Apple's response to the ruling on the LG Motion to Dismiss for the very purpose of receiving the Delaware Court's ruling on the same issues and avoiding repetitive motion practice. *Id.* The case was transferred by stipulation to this Court. (Dkts. 8, 16 and 17).

This action was transferred to the Northern District of California on January 21, 2020 (Dkt.

2

18) and assigned to this Court on February 4, 2020. (Dkt. 22). By that time, oral argument had been scheduled on the LG motion for February 10, 2020 and the parties waited for the outcome on that motion from the Delaware Court. On February 10, 2020, and at the conclusion of oral argument, Judge Noreika denied the LG motion to dismiss. (Dkt. 42). Yorio Decl. ¶ 12. A copy of the transcript of the February 10, 2020 hearing is attached as Exhibit 5 to the accompanying Declaration of Robert Yorio.

Following that hearing, counsel discussed how to proceed in this action in light of the Delaware Court ruling. Yorio Decl. ¶ 13. Counsel agreed that it made sense for Sentius to proceed first and file an amended pleading and Apple, in turn, received an extension to respond to that amended pleading. Yorio Decl. ¶ 13. A Stipulation was filed to that effect on February 13, 2020 (Dkt. 25) and Sentius filed its First Amended Complaint on February 28, 2020 which pleading conformed to the Delaware Court rulings on direct infringement and joint or divided infringement. (Dkt. 28).

Instead of filing an Answer to the First Amended Complaint, Apple counsel transmitted a letter of March 6, 2020 which was little more than a warmed over and slightly revised version of the initial correspondence of October 10, 2020. See, Absher Declaration, Exhibits A and B. Needless to say, this March 6 letter was not the expected response from Apple given the Delaware Court rulings and the additional allegations in the Sentius First Amended Complaint. Yorio Decl. ¶ 16. Nevertheless, to avoid needlessly repetitive motion practice in this Court, Sentius counsel delivered a letter to Apple counsel on March 20, 2020 containing point by point responses to each issue raised by Apple. Yorio Decl. ¶ 16 and Exhibit 6. In that correspondence, Sentius offered to file a Second Amended Complaint incorporating the responses in its March 20, 2020 correspondence if Apple agreed to file an Answer to that pleading. *Id.* Apple accepted the offer to agree to the filing of a Second Amended Complaint but declined to agree to the filing of an Answer. Yorio Decl. ¶ 16 and Exhibit 6.

On March 26, 2020, Sentius filed its Second Amended Complaint which incorporated all modifications set forth in the March 20, 2020 correspondence. (Dkt. 37). Still dissatisfied, and at this point predictably so, Apple filed its oft threatened Motion to Dismiss.

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

### III.   LEGAL STANDARD

When addressing a Fed. R. Civ. P. 12(b)(6) motion, the Court must determine whether the facts in the pleading, which are accepted as true, are sufficient "to state a claim to relief that is plausible on its face." *Nayab v. Capital One Bank (USA), N.A.,* 942 F. 3d 480, 496 (9th Cir. 2019) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550, U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

**A.      Sufficiency of Pleadings**

In assessing the plausibility of a claim, a court must construe the complaint in the light most favorable to the plaintiff, and determine whether the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556); *Nalco Co. v. Chem-Mod, LLC,* 883 F. 3d 1337, 1347 (Fed. Cir. 2018); *Windy City Innovations, LLC v. Microsoft Corporation,* 193 F. Supp. 3d 1109, 1112 (N.D. Cal. 2016). "The plausibility standard is not akin to a 'probability requirement', but it asks for more than a sheer possibility that the defendant has acted unlawfully." *Nayab,* 942 F. 3d at 496 (quoting *Twombly,* 550 U.S. at 556).  A court's analysis is a context-specific task and it should "draw on its judicial experience and common sense" in considering such a motion. *Iqbal*, 556 U.S. at 679; *Nayab,* 942 F.3d at 496; *Windy City,* 193 F. Supp. 3d at 1113.

To state a claim for patent infringement, a complaint must include five factual assertions: (1) ownership of the patent; (2) name of each defendant; (3) cite the patent allegedly infringed; (4) state how the defendant allegedly infringes; and (5) point to the sections of the patent law invoked. *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013). Plaintiff need not prove its case at the pleading stage but need only place the potential infringer on notice of what activity it is accused of infringing. *Nalco*, 883 F.3d at 1350. "[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Id.* at 1350 (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litigation,* 681 F.3d 1323, 1335 (Fed. Cir. 2012)).

**B.      Direct Infringement Liability for a Method Claim**

A party can be directly liable for infringement of a method claim when it implements its use

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

of the method via software that performs each step of the method. See, e.g. *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1329 (Fed. Cir. 2010). In *SiRF*, the Federal Circuit did not reach the question of joint infringement "because we do not read the relevant claims as requiring that any of the specified actions be taken by SiRF's customers or by the end users of the GPS devices." Rather, the Federal Circuit found that when properly construed, SiRF met the claim limitations directly by either initiating or having its processor and code carry out the claimed steps. *Id.* 601 F.3d at 1331.

The allegations in the SAC are substantially similar to those found sufficient in *SiRF* where, for example, Sentius alleges that "Apple has directly infringed the method claims [of the '633 Patent"] by using the method steps via software provided in the Accused Apple Products to execute the accused functionality" SAC, ¶ 17. *See also* SAC, ¶ 70 (alleging Apple has infringed method Claim 1 of '985 Patent.)  Just like the plaintiff in *SiRF,* end users cannot modify the Apple software embedded in their iPhones or MacBooks or the spellcheck or grammar check functionality provided by Apple. Moreover, actual use by Apple of each step of method *Claim* 62 of the '633 Patent is specifically alleged.  *See* SAC, ¶¶ 35-46. Those paragraphs are not addressed by Apple in its motion and they spell out in detail exactly how Apple (and not its customer) practices each step of that Claim.  *See also*, *id.* at ¶¶ 56-61 (alleging how Apple uses each step of Claim 1 of the '985 Patent.)

Cases cited by Apple such as *Ormco Corp. v. Align Tech., Inc.,* 463 F. 3d 1299, 1311 (Fed. Cir. 2006) do not support Apple's Motion because Plaintiff specifically alleges Apple's own use of its spellcheck functionality in the operation of the accused devices, rather than the sale of a device that is merely "capable of infringing use." Because the Accused Apple Products themselves actually perform the steps of the method claims of the '633 Patent, and do so automatically, *Ormco* and the other cases cited by Apple on pp. 4-5 of its Motion are inapposite.

Importantly with respect to direct infringement, the Patent Local Rules of this Court require plaintiffs in patent infringement cases to prepare and serve their Disclosure of Asserted Claims and Infringement Contentions after the Initial Case Management Conference. Patent L.R. 3-1. This Court specifically noted the purpose of Patent Local Rules in denying a similar *Iqbal/Twombly* motion to dismiss direct infringement claims. *Windy City,* 193 F. Supp. 3d at 1115. The Court stated that:

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

"The Complaint here is not so riddled with such deficiencies. To the contrary, the Complaint describes (i) the Accused Instrumentalities and the functionalities of those products which allegedly infringe on plaintiff's patents and (ii) the ways in which the Accused Instrumentalities meet claims of the Patents. Additionally, defendant's argument that it should be entitled to notice at the pleading stage of which specific products infringed on which specific claims in the patents is belied by both the local patent rules and Federal Circuit authority. *See Phonometrics,* 203 F.3d at 794 (reversing district court order, which dismissed a complaint with leave to amend to include specific allegations about each element of the claims of the asserted patent); *see also* Patent L.R. 3-1 (setting deadlines for disclosure of specific patent claim assertions). The complaint's allegations relating to plaintiff's direct infringement claim against defendant are sufficient to withstand a motion to dismiss. Moreover, under the patent rules, the plaintiff is required to serve detailed disclosures later this summer." *Windy City,* 193 F. Supp. 3d at 1115.

## C.   Joint Infringement

There are four (4) Federal Circuit decisions that govern the consideration of the present Motion. The first of these is *Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (*"Akamai V"*). In *Akamai V,* the Federal Circuit broadened the attribution rules for direct infringement under § 271(a) in those situations "where more than one actor is involved in practicing the steps [of a method claim]". The Court held that an entity would be held liable for the performance of method steps by others "where that entity directs or controls others' performance," or "where the actors form a joint enterprise." *Id.* The Federal Circuit then elaborated on agency principles applicable to direct infringement and went on to hold that "liability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step one steps of a patented method and establishes the manner or timing of that performance." *Id.* 797 F.3d at 1023. The Court also noted that "in the future, other factual scenarios may arise which warrant attributing others' performance of method steps to a single actor," and that principles of attribution are fact specific and directly dependent upon the context in which those facts appear. *Id.*

The case of *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.* 845 F. 3d 1357, 1363 (Fed. Cir. 2017) followed *Akamai V* and applied its reasoning to an analogous factual framework. *Eli Lilly* is instructive on the two prongs of *Akamai V* in the following respects. On the first prong, the Court noted that the "conditioning" requirement in *Akamai V* was not limited to legal obligations or technological prerequisites and that it was unnecessary for a defendant to verify compliance with its

instructions or to threaten denial [of medical treatment in that case] if instructions were not followed. *Id.* 845 F. 3d at 1366-67. The Court also addressed the second prong of establishing the manner or timing of performance and held that physicians conditioned patient participation in an activity or receipt of a benefit on folic acid administration by advising patients as to the dosage range and schedules for folic acid notwithstanding product labeling that gave patients "wide berth to select the dose…, the dosage form…., and the timing of folic acid self-administration." *Id.* at 1367-68.

In *Travel Sentry, Inc. v. Tropp,* 877 F.3d 1370, 1381 (Fed. Cir. 2017), the Federal Circuit specifically noted the broadening of circumstances in which a defendant may be held responsible for acts committed by others and the corresponding "relaxing [of] tighter constraints on such attribution reflected in our earlier precedents." (quoting *Mankes v. Vivid Seats, Ltd.,* 822 F. 3d 1302, 1305 (Fed. Cir. 2016)). In this case, the defendant, Travel Sentry, performed certain steps of the patented method, and agents of the Transportation Security Administration ("TSA") performed the final two steps. The Federal Circuit held that the evidence was sufficient for a reasonable jury to conclude that the TSA agents' "performance of the final two claim steps was attributable to Travel Sentry". The Court explained that "whatever benefits flow to TSA . . . can only be realized if TSA performs the final two claim steps." 877 F.3d at 1382-83. The Court, moreover, reaffirmed the conditioning standard articulated in *Eli Lilly,* stating that conditioning does not require the imposition of a "legal obligation" or a "technological prerequisite" nor does it require verification of compliance or a threat of denial of treatment.

Finally, the Court in *Nalco Co. v. Chem-Mod, LLC,* 883 F.3d 1337, 1351-53 (Fed. Cir. 2018) also noted with approval the broadening of circumstances justifying joint or divided infringement in *Akamai V* and expanded in *Travel Sentry* and proceeded to reverse a district court grant of a Rule 12(b)(6) motion ruling that allegations that conditioned the receipt of monetary benefits for the performance of testing directed by the defendants satisfied the two-prong *Akamai V* test. The Court also noted that it did not matter which entity or facility performed the testing because the defendants directed the testing. *Id.* 883 F.3d at 1353.

**D.     Leave to Amend**

Where a party moves to amend its pleadings on or before the deadline to amend the

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

pleadings, a motion for leave to amend is evaluated under Fed. R. Civ. Proc. 15. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2009). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* Fed. R. Civ. *See United States v. Dang*, 488 F.3d 1135, 1143 (9th Cir. 2007) (affirming the grant of leave to **amend** based on the lower court's consideration of "[t]he rights of the parties, the ends of justice, and judicial economy"); *Lopez v. Smith,* 203 F. 3d 1122, 1127 (9th Cir. 2000); *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 109842, at *8 (N.D. Cal. July 14, 2017) (permitting amended complaint even when other case management deadlines would be impacted.); *WiNet Labs LLC v. Apple, Inc.,* No. 5:19-cv-2248- EJD, 2020 WL 409012, at * 6 (N.D. Cal. January 24, 2020).

## IV.    ARGUMENT

### A.    The Second Amended Complaint States a Valid Claim for Direct Infringement of the Method Claims of the '633 Patent.

Defendant urges the Court to apply the legal principle that "merely selling or offering to sell software containing instructions to perform a patented method is insufficient to show a direct infringement of a method claim". Apple Motion at 7:7-9. Apple then contends that Sentius has not asserted any actual use by Apple and that Sentius has only alleged that Apple "provides products containing software that, once used by an end user, allegedly practices the steps of a claimed method." Apple Motion at 7:9-11.

Apple's characterization of the allegations in the SAC is incorrect and the legal principle on which it relies does not apply to the facts alleged in the SAC. In Paragraph 17 of the SAC, Sentius specifically alleged that:

> "17. On information and belief, Apple has directly infringed the method claims by *using* the method steps via software provided in the Accused Apple Products *to execute* the accused functionality and by designing software to carry out the method steps via the accused functionality or by conditioning certain benefits to

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1
2
the accused functionality on the user's performance of certain acts and the establishment of the manner or timing of that performance." (emphasis supplied)

3   Actual use by Apple is further alleged in detail in ¶¶ 35-46 of the SAC addressing method

4   Claim 62 of the '633 Patent.  Those paragraphs are not addressed by Apple in its motion and spell

5   out in detail exactly how Apple (and not its customer) practices each step of that Claim. Paragraph

6   35 of the SAC is directed to Claim 62 in its entirety and alleges that "Apple has practiced the

7   claimed method [of Claim 62] via software instructions *used* by the Accused Apple Products that

8   execute the recited method steps." Thereafter, the SAC alleges use by Apple of each of the steps of

9   Claim 62. Paragraph 36 is illustrative and reads as follows:

10
11
12
"36. Claim 62 then recites "determining a beginning position address of textual source material stored in an electronic database." On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that assign an initial "zero" position location to the first character of a document's text within an open textual file."

13   Similarly, Paragraphs 37-46 of the SAC proceed to describe how each step of Claim 62 is

14   practiced and used by the Accused Apple Products. These factually specific allegations ignored by

15   Apple are sufficient to deny Apple's Motion to Dismiss the method claims of the '633 Patent

16   asserting direct infringement. Likewise ignored by Apple are the allegations of direct infringement

17   of the '985 Patent, including ¶¶ 56-61 of the SAC alleging how Apple uses each step of Claim 1 of

18   the '985 patent.

19   Apple places principal reliance on *Ericsson, Inc. v. D-Link Systems,* 773 F. 3d 1201, 1222

20   (Fed. Cir. 2014). Apple Motion at pp. 7-8. *Ericsson* is a pre-*Akamai V* opinion that distinguished

21   between the offer or sale of software containing instructions to perform a patented method which are

22   performed on the end product which is controlled by a third party (insufficient for direct

23   infringement) and the offer or sale of devices where the steps are performed by equipment controlled

24   by the defendant (sufficient for direct infringement). *Id.* 773 F. 3d at 1221-22. The allegations in

25   ¶¶ 35-46 and ¶¶ 56-61 of the SAC against Apple fall into the latter category as they respectively

26   assert the specific practice by Apple (rather than a third party) of each of the steps of exemplary

27   method Claim  62 of the '633 Patent and method Claim 1 of the '985 Patent. As noted by the Court

28   in *Ericsson,* direct infringement of a method claim is present where, as this case, the "accused

9

devices [must] also *actually perform* that method. *Id.* 773 F. 3d at 1221 (emphasis in original). Plaintiff has alleged actual performance of each step of the method claims in accordance with *Ericsson. Ericsson* does not support Apple's Motion.

Apple also cites to a recent decision from another Court in this District in support of this part of its Motion. In *WiNet Labs LLC v. Apple Inc., supra,* the Court dismissed a complaint alleging direct infringement of a method claim directed to the use of a Personal Hotspot service. The Court noted that although the plaintiff alleged that Apple's software performed each step of the claim, it did not allege "that the steps performed on user's device occur automatically." *Id.* at 2020 WL 409012 at *4-*5. The Court cited to *Ericsson* (discussed above) and *SiRF* (discussed on page 6, *supra*). There are several responses to the *WiNet* decision. While the Court cited to two Federal Circuit decisions for support of an "automatic performance" requirement, the actual holdings of those cases did not include such a required allegation.

In *SiRF,* the Federal Circuit held that the accused GPS devices infringed the asserted method claims because they "are drawn to actions which can be performed and are performed by a single party." *Id.* at 1329.  The Court reiterated that holding in Part II of its opinion which is reprised here in its entirety because of its direct applicability to the present Motion.

> "When properly construed, it is clear that SiRF infringes as its devices and software dictate the performances of the "processing" and "representing" steps. Once the technology is enabled, SiRF's SiRFstarIII chip and software, designed and built by SiRF, automatically perform the disputed steps of the claims at issue because the SiRFstarIII chips are programmed by SiRF to use the Instant Fix ephemeris data automatically if it has been transmitted to the remote device. Neither SiRF's customers (the equipment manufacturers and software developers) nor the end users of the GPS receivers can modify the use of the EE files by SiRF's software or the functionality of the SiRFstarIII chip. Once the GPS receiver is enabled and ready to process the data, only SiRFs actions are involved in "processing" or "representing" the data.
>
> SiRF performs all of the claim limitations of claim 1 of the '651 patent and claim 1 of the '000 patent, and therefore directly infringes the asserted claims.
>
> *Id.* 601 F.3d at 1331.

The *SiRF* Court's holding focused on the presence of the defendant's performance of the steps of the two method claims at issue. While the Court recognized that the chip and software designed and built by SiRF automatically performed the disputed steps, the presence of the

automatic component was sufficient to show performance if the steps, but it was not a necessary condition of performance. What was of equal importance was the presence of other facts such as the inability of end users (or equipment manufactures and software developers) to modify either the use of EE files by the software or the functionality of the custom chips supplied by SiRF. *Id.* In reaching its decision, the Court also noted that once the mobile GPS receiver was enabled (by end users), the chips are programmed to use certain data automatically once it has been transmitted to the remote device (again by end users) where the "processing" or "representing" steps take place. In view of all of those facts, the Court concluded that the SiRF performed all of the limitations of the method claims in that case.

*SiRF* is on all fours with present case where the steps of method Claims 62 and 146 of the '633 Patent are practiced by Apple as alleged in Paragraphs 35-46 and 49 of the SAC. It is also the case that the performance of these steps is accomplished by the iOS that is included in iPhones, the MacBooks OS and the Apple applications used on those devices. No Apple customer installs software for use with his or her iPhone or MacBook. Neither do they activate the spell check feature in their devices or, heaven forbid, even attempt to modify Apple software. This is so because the steps required by the method claims of the '633 Patent and the '985 Patent are all automatically performed by Apple itself as the user composes his or her emails or Word document.

The *WiNet Labs* Court also relied upon and quoted from *Ericsson* on p. 6 of the Order. However, and like *SiRF,* the Federal Circuit in *Ericsson* distinguished between the factual scenario in that case where the method claims were performed on the end product and controlled by a third party as opposed to claims that the defendant (D-Link) "performed the infringing steps." *Ericsson,* 773 F.3d at 1222. The *Ericsson* Court also included a jury instruction that was not provided to the jury, but which would have supported a finding of direct infringement stating that: "Importantly, however, the district court did not instruct the jury that *D-Link could directly infringe a method claim if the accused products were used to execute the patented steps." Id.* at 1222. (emphasis supplied). Although the Court in *Ericsson* did note the fact that in the case before it, no steps were automatically performed by equipment controlled by D-Link, "automatic performance" was not part of the holding. In the present case, Sentius has alleged that Apple has actually practiced each of the

steps of the method claims "via software instructions used by the Accused Apple Products." These allegations comport with the above-cited jury instruction recommended by the Federal Circuit in *Ericsson.*  Sentius has stated a valid claim against Apple for direct infringement of the method claims of the '633 and '985 Patents.

**B.      Sentius Has Alternatively Stated Valid Claims for Joint or Divided Infringement of the Method Claims of the '633 and '985 Patent.**

**1.      The SAC Contains Allegations of Fact That Are Consistent with Federal Circuit Law.**

In the SAC, Sentius pleaded the application of joint and divided infringement of a single step of the method claims as an alternative theory of liability. This is the "selecting a discrete portion" step. In the '633 Patent, this step is addressed in Paragraph 41 of the SAC which alleges performance by Apple as follows:

> "41. Claim 62 further recites "selecting a discrete portion of an image of the textual source material".  On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that receive a user input (such as by the user "clicking") on a given misspelled word and to select that indicated misspelled word for further processing."

In Paragraph 50 of the SAC, Sentius alleges, in the alternative, that if a user's activity is determined to be required to execute part of this step (clicking on the red squiggly line which the Apple device has supplied to identify a misspelled word or a grammatical error, *i.e.* the discrete portion of an image of the textual source material), Apple has conditioned the user's receipt of the benefit of spelling or grammar suggestions only by clicking on the red squiggly line below the misspelled word or incorrect phrase provided by Apple on the Apple devices. Sentius further alleges that Apple establishes the manner (clicking the red squiggly line) or the timing (when the line appears on the user's screen) of performance because the user input precedes the display of the spelling or grammar suggestions. *See* SAC ¶¶ 50 ('633 Patent) and 70 ('985 Patent) ("Apple's design of such software allows the user to indicate which highlighted word or phrase…by clicking on the red squiggly line below the word or phrase ***before*** they are displayed.")

These allegations are sufficient to establish liability on the part of Apple for joint or divided infringement under Federal Circuit precedent. In *Akamai V,* for example, the Court noted that direct liability for joint or divided infringement was present because "if Limelight's customers wish to use

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Limelight's product, they must tag and serve content." *Id.* 797 F.3d at 1024. Here too, if Apple iPhone or MacBook users wish to avail themselves of the benefit of spelling or grammar corrections, they must first click on the word or phrase when it appears on their screens. In *Eli Lilly,* the Court determined that physicians had conditioned pemetrexed treatment on the administration of folic acid by patients in the manner specified by their physicians. *Id.* 845 F. 3d at 1365-65. Similarly, Apple iPhone and MacBook users can obtain the benefits of suggested spelling or grammatical corrections if and only if they click on the red squiggly line.

In its Motion, Apple contends that mere guidance or instructions are insufficient, by themselves, to show conditioning under *Akamai V.* Motion at pp. 9-10. But Plaintiff has not alleged mere guidance or instructions.  By contrast, Paragraphs 50 and 70 allege that if a user's activity is determined to be required, the user can only obtain the benefit of suggested spelling or grammar corrections by clicking on the red squiggly line and that is the very definition of conditioning a benefit "upon the performance of one or more claim steps". *Travel Sentry,* 877 F.3d at 1380. Context is critically important in determining issues of joint or divided infringement.  As the Federal Circuit noted in *Nalco*:

> Our case law emphasizes "'the importance of correctly identifying the relevant 'activity' or 'benefit' that is being conditioned upon the performance of one or more claim steps. The cases also emphasize that the context of the claims and conduct in a particular case will inform whether attribution is proper under [Akamai's] two-prong test." *Id.* at 1380. And  "a common threat connects" our case law on divided infringement, no matter the relationship between the parties: we look for "evidence that a third party hoping to obtain access to certain benefits can only do so if it performs certain steps identified by the defendant, and does so under the terms prescribed by the defendant."  *Id.* 883 F. 3d at 1351-52 (citing *Akamai V).*

Moreover, a party may be liable for direct infringement of a method claim even when its use of the method (via software or otherwise) includes others in the performance of one or more claimed steps. In *Ioengine, LLC v. Paypal Holdings, Inc.*, 2019 U.S. Dist. LEXIS 12195, *7, 2019 WL 330515 (D. Del. January 25, 2019), for example, the Court held that IOENGINE had sufficiently plead direct infringement liability against PayPal although third-part developers were involved in carrying out certain steps of the claimed method where "the ability of PayPal's POS Partners to interact with the accused PayPal products depends on their use of PayPal's software development

kits, which control the performance of the steps of the method claims when the PayPal software is run by the POS Partners. The PayPal software thus establishes the manner and timing of the performance of the claimed method steps by controlling the manner in which the POS Partner interacts with the accused PayPal products to carry out the infringing functionality."

Sentius' alternative allegations of joint or divided infringement of method claims in the '633 and '985 Patents comply with Federal Circuit law and are sufficient to state a valid claim. Apple's Motion to Dismiss these claims should be denied.

### 2. Plaintiff Has Sufficiently Pled Facts Identifying the Manner of Interaction Between Apple and its Customers.

On pages 10-11 of its Motion, Apple places principal reliance on the case of *Lyda v. CBS Corp.,* 838 F. 3d 1331 (Fed. Cir. 2016) in support of its argument for a lack of attribution. *Lyda* is factually distinguishable for three (3) reasons. *First*, the plaintiff in *Lyda* did not make "by design" allegations. To the contrary, and unlike the present case, the plaintiff in *Lyda* relied on Form 18 for its pleading and the Court specifically held that the pleading requirements for joint infringement are not satisfied by Form 18. *Lyda,* 838 F.3d at 1339. Sentius has not filed a Form 18 complaint against Apple and *Lyda* is inapplicable for that reason alone.

*Second,* the complaint in Lyda failed to set forth *any* facts in support of three (3) allegations: (1) that CBS Interactive directed or controlled independent contractors, (2) that those independent contractors in turn directed or controlled unnamed third parties or (3) the presence of any relationship between the defendants and the unnamed third parties who owned or borrowed cellphones. *Lyda,* 838 F. 3d at 1340. Sentius' SAC contains none of those deficiencies and alleges the presence of direct and specific involvement by an Apple user in clicking on the misspelled word or grammatical mistake and only at a certain time at which the user wishes to see the suggested corrections in order to obtain the benefit of spellcheck or grammar check feature in actually seeing the suggested corrections so that they can select one for replacement. SAC ¶¶ 50 and 70.  Users of iPhones and MacBooks are direct customers of Apple unlike the plaintiff in *Lyda,* who claimed that the CBS defendants had conducted audience testing of their BIG BROTHER show through independent contractors who in turn communicated with unnamed and unknown third parties

through text messaging with cell phones (owned or borrowed by those unnamed and unknown users and associated with no particular cell phone provider) as part of an electronic voting system. *Lyda,* 883 F.3d at 1336-37 and 1340. *Lyda* is therefore clearly distinguishable from the case before this Court.

*Third, Lyda* was decided more than 1 year prior to the Federal Circuit's decision in *Travel Sentry. Travel Sentry* expanded the direction and control test in *Akamai* to dispense with the need for legal obligations, technical prerequisites, supervision or influence over user, or verification of compliance or threat of denial to users. All that is necessary after *Travel Sentry* is that the plaintiff allege facts sufficient to warrant an inference that the desired benefit at issue <u>can</u> <u>only</u> <u>be</u> <u>obtained</u> <u>by</u> <u>performing</u> <u>a</u> <u>certain</u> <u>step</u> <u>or</u> <u>steps</u>. *Travel Sentry,* 877 F. 3d at 1383. That is exactly what Sentius alleges in Paras. 50 and 70 of the SAC.

Finally, it is noteworthy that Apple has not established that any claimed step even requires user input.  Apple's Motion is dependent on constructions of the "selecting a discrete portion of an image of the textual source material" in the method claims of the '633 Patent and the "identifying content for the at least one term" in the method claims of the '985 Patent as requiring user involvement. In the SAC, Sentius pled that this step is performed by Apple (SAC ¶¶ 41 and 59) and alternatively pled that if those steps are determined to require user involvement, Sentius has satisfied the test for joint or divided infringement. Whether or not this is an actual claim requirement is a matter of claim construction and Apple's motion merely assumes that this is the case. This part of Apple's Motion should be independently denied on these grounds. *Nalco,* 883 F.3d at 1350. (holding claim construction disputes not suitable for resolution on a motion to dismiss.). "If a court is required to construe the meaning of claim terms and perform an infringement analysis in order to resolve a motion to dismiss, the motion should be denied, because this type of analysis is inappropriate at the pleading stage." *Pragmatis AV, LLC v. TangoMe, Inc.,* 2013 U.S. Dist. LEXIS 19075 at *14-16 (D. Del. Feb. 13, 2013); *Blackbird Technologies v. Uber Technologies, Inc.,* 2020 U.S. Dist. LEXIS 1310 at *22 (D. Del. January 6, 2020).

### 3.    The Delaware Court's Decision Supports the Sufficiency of the SAC.

As with the prior licensees, the accused spell check functionality is substantially identical

1  across LG, HTC, and Apple smartphones. On August 30, 2019, the LG defendants moved in the

2  U.S. District Court for the District of Delaware, Case. No. 1-19-cv-01217, to dismiss Sentius'

3  Second Amended Complaint in that case. In that complaint, Sentius laid out the nearly identical

4  infringement allegations for LG's practice of method Claim 62 of the '633 Patent. Here is a side-by-

5  side comparison of the substantially identical allegations in the complaints regarding this Claim:

| Sentius v. LG Second Amended Complaint DDE-1-18-cv-01217 (Dkt. 26) | SAC (Dkt. 37) |
|---|---|
| 24. Claim 62 of the '633 Patent is an independent method claim that covers a "computer-implemented method for linking textual source material to external reference materials for display." On information and belief, LG practices the claimed method via software instructions in the accused products which are used by LG to execute the recited method steps. | 35. Claim 62 of the '633 Patent is an independent method claim that covers a "computer-implemented method for linking textual source material to external reference materials for display. On information and belief, Apple has practiced the claimed method via software instructions used by the Accused Apple Products that execute the recited method steps. |
| 25. Claim 62 then recites "determining a beginning position address of textual source material stored in an electronic database." On information and belief, LG practices this step via software instructions in the LG smartphones when they are executing the aforementioned applications in the United States. These instructions are used by LG in the accused LG smartphones to assign an initial "zero" position location to the first character of an LG Email/Messages/Note Pad document's text within an open LG Email/Messages/Note Pad document file. | 36. Claim 62 then recites "determining a beginning position address of textual source material stored in an electronic database." On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that assign an initial "zero" position location to the first character of a document's text within an open textual file |
| 26. Claim 62 further recites "cutting the textual source material into a plurality of discrete pieces." On information and belief, LG practices this step via software instructions in the LG smartphones when they are executing the aforementioned applications in the United States. These instructions are used by LG in the accused LG Smartphones to identify the discrete | 37. Claim 62 further recites "cutting the textual source material into a plurality of discrete pieces." On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that identify the discrete character strings representing the words contained within an open textual file. |

16

| Sentius v. LG Second Amended Complaint DDE-1-18-cv-01217 (Dkt. 26) | SAC (Dkt. 37) |
|---|---|
| character strings representing the words contained within an open LG Email/Messages/Note Pad document file. | |
| 27. Claim 62 further recites "determining starting point addresses and ending point addresses of the plurality of discrete pieces based upon the beginning position address." On information and belief, LG practices this step via software instructions in the LG smartphones when they are executing the aforementioned applications in the United States. These instructions are used by LG in the accused LG Smartphones to identify the starting and ending character position offsets from the first character position for the character strings of representing the potentially misspelled words contained within an open LG Email/Messages/Note Pad document file, (i.e., that have no matching character string in a spell check dictionary's lexicon.). | 38. Claim 62 further recites "determining starting point addresses and ending point addresses of the plurality of discrete pieces based upon the beginning position address." On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that identify the starting and ending character position offsets from the first character position for the character strings of representing the potentially misspelled words contained within an open document file, (e.g., that have no matching character string in a spell check dictionary's lexicon). |
| 28. Claim 62 further recites "recording in a look up table the starting and ending point addresses." On information and belief, LG practices this step s via software instructions in the LG smartphones when they are executing the aforementioned applications in the United States. These instructions are used by LG in the accused LG Smartphones to record as discrete entries in a spell check look-up table the starting point and ending point offset positions from the beginning position of each such character string. | 39. Claim 62 further recites "recording in a look up table the starting and ending point addresses." On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that record as discrete entries in a look-up table the starting point and ending point offset positions from the beginning position of each such character string. |
| 29. Claim 62 further recites "linking the plurality of discrete pieces to external reference materials by recording in the look-up table, along with the starting and ending point addresses of the plurality of discrete pieces, links to the external reference materials, the | 40. Claim 62 further recites "linking the plurality of discrete pieces to external reference materials by recording in the look-up table, along with the starting and ending point addresses of the plurality of discrete pieces, links to the external reference |

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

| Sentius v. LG Second Amended Complaint DDE-1-18-cv-01217 (Dkt. 26) | SAC (Dkt. 37) |
|---|---|
| external reference materials comprising any of textual, audio, video, and picture information." On information and belief, LG practices this step via software instructions in the LG smartphones when they are executing the aforementioned applications in the United States. These instructions are used by LG in the accused LG Smartphones to, for each starting and ending point position entry for a misspelled word, record a pointer in the look-up table that links that entry to a spell check dictionary containing the specific suggested correct spellings for that entry's character string. | materials, the external reference materials comprising any of textual, audio, video, and picture information." On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that, for each starting and ending point position entry for a misspelled word, record a pointer in the look-up table that links that entry to a spell check dictionary containing the specific suggested correct spellings for that entry's character string. |
| 30. Claim 62 further recites "selecting a discrete portion of an image of the textual source material". On information and belief, LG practices this step via software instructions in the LG smartphones when they are executing the aforementioned applications in the United States. These instructions are used by LG in the accused LG Smartphones to receive a user input (such as by the user "clicking") on a given misspelled word and to select that indicated misspelled word for further processing. | 41. Claim 62 further recites "selecting a discrete portion of an image of the textual source material". On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that receive a user input (such as by the user "clicking") on a given misspelled word and to select that indicated misspelled word for further processing. |
| 31. Claim 62 further recites "determining a display address of the selected discrete portion." On information and belief, LG practices this step via software instructions in the LG smartphones when they are executing the aforementioned applications in the United States. These instructions are used by LG in the accused LG Smartphones to identify the horizontal and vertical coordinates of the display location where the user's input was received. | 42. Claim 62 further recites "determining a display address of the selected discrete portion." On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that identify the horizontal and vertical coordinates of the display location where the user's input was received. |
| 32. Claim 62 further recites "converting the display address of the selected discrete portion to an offset value from the beginning | 43. Claim 62 further recites "converting the display address of the selected discrete portion to an offset value from the beginning |

18

| Sentius v. LG Second Amended Complaint DDE-1-18-cv-01217 (Dkt. 26) | SAC (Dkt. 37) |
|---|---|
| position address." On information and belief, LG practices this step via software instructions in the LG smartphones when they are executing the aforementioned applications in the United States. These instructions are used by LG in the accused LG Smartphones to convert the horizontal and vertical coordinates of the display location where the user's input was received to a character position offset value from the "zero" position value. | position address." On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that convert the horizontal and vertical coordinates of the display location where the user's input was received to a character position offset value from the "zero" position value. |
| 33. Claim 62 further recites "comparing the offset value with the starting and ending point addresses recorded in the look-up table to identify one of the plurality of discrete pieces." On information and belief, LG practices this step via software instructions in the LG smartphones when they are executing the aforementioned applications in the United States. These instructions are used by LG in the accused LG Smartphones to identify which entry in the look-up table the identified character position offset value of the user's input falls within by comparing it to starting and ending point position ranges recorded in the look-up table. | 44. Claim 62 further recites "comparing the offset value with the starting and ending point addresses recorded in the look-up table to identify one of the plurality of discrete pieces." On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that identify which entry in the look-up table the identified character position offset value of the user's input falls within by comparing it to starting and ending point position ranges recorded in the look-up table. |
| 34. Claim 62 further recites "selecting one of the external reference materials corresponding to the identified one of the plurality of discrete pieces." On information and belief, LG practices this step via software instructions in the LG smartphones when they are executing the aforementioned applications in the United States. These instructions are used by LG in the accused LG Smartphones to retrieve and temporarily store in a buffer the suggested spelling corrections from the spell check dictionary pointed to for the character string of the identified matching entry. | 45. Claim 62 further recites "selecting one of the external reference materials corresponding to the identified one of the plurality of discrete pieces." On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that retrieve and temporarily store in a buffer the suggested spelling corrections from the spell check dictionary pointed to for the character string of the identified matching entry. |

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

| Sentius v. LG Second Amended Complaint DDE-1-18-cv-01217 (Dkt. 26) | SAC (Dkt. 37) |
|---|---|
| 35. Claim 62 further recites "displaying on a computer the selected one of the external reference materials." On information and belief, LG practices this step via software instructions in the LG smartphones when they are executing the aforementioned applications in the United States. These instructions are used by LG in the accused LG Smartphones to retrieve the suggested corrections from the buffer and display them on LG smartphone's display. | 46. Claim 62 further recites "displaying on a computer the selected one of the external reference materials." On information and belief, Apple has practiced this step via software instructions used by the Accused Apple Products that retrieve the suggested corrections from the buffer and display them on the iPhone's display or on a user's computer display. |

In denying the motion following oral argument on February 10, 2020, the Court stated that:

> I'm going to deny the motion. As I stated in my prior ruling as to joint infringement, the Federal Circuit has made clear allegations of joint infringement must satisfy the pleading standard of Iqbal and Twombly. Here I think that there are plausible allegations in the second amended complaint that LG conditions participation in the spellcheck activity or receives the benefit of spellcheck upon performance of the steps of the patented method and establishes the manner or timing of that which is required in Akamai.

Yorio Decl., Exh. 5 at 17:18-18:2.

Apple was aware of LG's motion and the basis for its denial and its response to the Complaint in the present action was specifically extended to 21 days after that Delaware Court ruling. Apple filed this motion anyway notwithstanding the SAC's substantially identical allegations to the LG complaint with regard to direct infringement of method Claim 62 of the '633 Patent. Egregiously, Apple contends that "the SAC never alleges that Apple performs every step of claim 62…" even though Sentius sets forth Apple's performance of each step in ¶¶ 35-46 of the SAC. Apple even cites to these paragraphs, but then blithely proceeds to ignore them focusing only on Paragraph ¶ 17. Apple also falsely states  that "the SAC alleges no facts about the required direction or control" for joint infringement liability despite the fact that  the allegations of  ¶¶ 17, 41-43, 50, 59-60 and 70 of the SAC specify that that the spelling suggestions are only displayed after the user provides an input by clicking on the word. Therefore, whether the word "required" or "allowed" is used in the SAC, that choice of words is inconsequential because the allegations are clear that user

input is a prerequisite, by design, to the user seeing the suggested spelling corrections in the accused functionality.

The *Lyda* cited by Apple in support of its motion was also argued before Judge Noreika who observed, before denying the motion:

> I know, I read the Lyda case, I cited it before.  I now have [additional] allegations.  You're saying well, they're not different but they look different to me.  So what I need to understand is when your saying they're not enough, what more would you require?  It can't be that they're required to produce an agreement that you all have with your customers that says we want you to infringe the patents. Right? So what do you want?"

Yorio Decl., Exh. 5 at 7:11-18.

Judge Noreika then ruled the allegations sufficient under *Lyda* under its rationale that LG directed the benefit be conditioned upon a prerequisite step by the user, as Sentius has alleged here almost identically.  *Id.* at 17:18-18:2. *Lyda* therefore does not support Apple's position. For the same reason, *Confident Techs., Inc. v. Fandango Media, LLC,* 2018 WL 6430539 at *4 (C.D. Cal. August 20, 2018) also cited by Apple, compels no different result because the plaintiff in that case " failed to allege which steps of the asserted method claim would be performed by Google." Here, Apple is on notice precisely from the allegations of SAC exactly which steps are actually performed by Apple, and for the alternatively pled theory of joint or divided infringement, exactly what step the user must take to obtain the benefit of seeing the spelling suggestions: click on the red squiggly word.

What is worse about Apple's reliance on *Lyda* and *Confident Techs* and Apple's motion as a whole is its disingenuous argument that the "allowed" language somehow suggests the user has any option but to click upon the word if they wish to see the spelling suggestions. This is so because Apple knows and cannot deny that the user must do this if they want to be shown the spelling suggestions.

Apple's position is particularly egregious because the "required" language that it has so strenuously argued needed to be in the SAC for Apple to be on proper notice was already present in the First Amended Complaint. *See* FAC (Dkt. 28), at ¶¶ 49 and 71 ("Apple's design of the operation of the spell check and grammar check engines require that the user indicate which highlighted word

21

SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

or phrase it wishes to see the spelling or grammar suggestions for before they are displayed for the user to choose one to replace the highlighted word or phrase.") Moreover, the FAC also included the claim-element-by-claim-element usage by Apple of each of the method steps of exemplary independent method Claim 62 of the '633 Patent and independent method Claim 1 of the '985 Patent. See, *e.g.* FAC at ¶¶ 34-45 and 58-62.

### 4. If the Court Determines that Additional Facts Need to Be Alleged, Leave to Amend Should Be Granted

Apple takes the position that justice dictates that any alleged defect in the SAC should result in the dismissal with prejudice of the direct infringement of method claims in the '633 and '985 Patents. For all the reasons set forth above, these allegations are sufficient. Moreover, even if had not been the case, the case is in its early stages, no discovery has taken place, neither infringement contentions nor invalidity contentions have been served, and each of the two amendments made by Sentius have been by stipulation. In *WiNet,* cited by Apple, Judge Davila granted leave to amend a complaint alleging claims for direct patent infringement of method claims determining that "amendment would not be futile." *WiNet,* 2020 WL 409012 at *6. Therefore, if the Court determines that any additional allegations are needed to place Apple on notice regarding its direct infringement liability of the method claims, the appropriate remedy would be to allow Sentius to remedy any remaining perceived lack of notice. Neither *Lyda* nor any other case cited by Apple dictates any other result under the facts presented here.

## V.   CONCLUSION

That Apple can only justify its motion by overlooking material factual allegations of the FAC and SAC regarding direct infringement of the method claims. Apple's real issue is not whether these allegations are adequate but rather that Apple is annoyed that Sentius refuses to "withdraw them" just because Apple demands that it do so. Motion at 14:15. Its Motion is not well founded and should be denied.

Dated: April 27, 2020

**CARR & FERRELL LLP**

By _____/s/ Robert J. Yorio_____
        ROBERT J. YORIO

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

1   Dated: April 27, 2020                **SETH LAW OFFICES**

2

3                                        By _____/s/ Sandeep Seth_____
                                             SANDEEP SETH
4
                                         Attorneys for Plaintiff
5                                        SENTIUS INTERNATIONAL, LLC

6

7   *Of Counsel:*

8   Brian E. Farnan
    Michael J. Farnan
9   **Farnan LLP**
    919 N. Market Street, 12th Floor
10  Wilmington, DE 19801
    Telephone: (302) 777-0300
11  Facsimile: (302) 777-0301
    Email Address:  bfarnan@farnanlaw.com
12  Email Address:  mfarnan@farnanlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 27, 2020 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. L.R. 5-1(h)(1). Any other counsel of record will be served by U.S. Mail or hand delivery.

By    <u>/s/ Robert J. Yorio</u>
              ROBERT J. YORIO

**SENTIUS' OPPOSITION TO DEFS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**