# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SENTIUS INTERNATIONAL, LLC,**<br>Plaintiff**,**<br>vs.<br>**APPLE INC.,**<br>Defendant**.** | CASE NO. 4:20-cv-00477-YGR<br><br>**ORDER GRANTING APPLE INC.'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br>Re: Dkt. No. 41 |

Plaintiff Sentius International, LLC ("Sentius") brings this patent infringement action against Defendant Apple Inc. ("Apple") for alleged infringement of two of its patents, namely U.S. Patent No. RE43,633 (the "'633 Patent") and 7,672,985 (the "'985 Patent"). Now before the Court is defendant's motion to dismiss plaintiff's claims for direct infringement of the '633 Patent method claims and joint infringement of the '633 and '985 Patent method claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

Having carefully reviewed the pleadings, the papers submitted on this motion, and the parties' arguments at the hearing held on May 19, 2020, and for the reasons set forth below, the Court **GRANTS** defendant's partial motion to dismiss.

**I.    BACKGROUND**

Sentius filed its complaint on August 31, 2019 in the District of Delaware, accusing Apple of infringing claims 17, 18, 62, 101, and 146 of the '633 Patent, as well as claims 1 and 11 of the '985 Patent, through the spell check features on certain products. (Dkt. No. 1 ("Compl.") ¶¶ 11, 20, 45.) Claims 62 and 146 of the '633 Patent and claim 1 of the '985 Patent are method claims. For example, claim 62 of the '633 Patent recites:

> 62. A computer-implemented **method** for linking textual source material to external reference materials for display, the method comprising the steps of:

        determining a beginning position address of textual source material stored in an electronic database;

        cutting the textual source material into a plurality of discrete pieces;

        determining starting point addresses and ending point addresses of the plurality of discrete pieces based upon the beginning position address;

        recording in a look up table the starting and ending point addresses;

        linking the plurality of discrete pieces to external reference materials by recording in the look-up table, along with the starting and ending point addresses of the plurality of discrete pieces, links to the external reference materials, the external reference materials comprising any of textual, audio, video, and picture information;

        selecting a discrete portion of an image of the textual source material;

        determining a display address of the selected discrete portion;

        converting the display address of the selected discrete portion to an offset value from the beginning position address;

        comparing the offset value with the starting and ending point addresses recorded in the look-up table to identify one of the plurality of discrete pieces;

        selecting one of the external reference materials corresponding to the identified one of the plurality of discrete pieces; and

        displaying on a computer the selected one of the external reference materials.

Following a stipulation to transfer the case to this District, Sentius filed an amended complaint, again asserting the same claims. (Dkt. No. 28 ("FAC").) The parties met-and-conferred to discuss the issues raised in Apple's present motion but agreed to stay the deadline for Apple's responsive pleading pending the resolution of a similar motion to dismiss in a Delaware litigation. *See Sentius Int'l, Inc. v. LG Elecs. U.S.A. ("LG")*, No. 18-1217-MN (D. Del. filed Aug. 9, 2018).

        In the Delaware litigation, the court had already granted LG's motion to dismiss Sentius' direct infringement allegations for method claims based on activity other than "use." (*See LG*, No. 18-1217, Dkt. No. 24 ("MTD I Tr.") at 25:14-24.) The court found that direct infringement of a method claim "requires performance of each and every step of the claimed method" and that "manufacture, sale, offer for sale or importation of an accused product cannot as matter of law

1    give rise to direct infringement liability for the asserted method claims." (*Id.*) However, Sentius
2    amended the complaint to allege specifically that LG used its accused products and also that LG is
3    responsible for users' activities because it "require[s] the user to click on the misspelled word . . .
4    if the user wishes the LG Smartphone display [to] suggest[] spelling corrections." (*Id.*, Dkt. No.
5    26 ("LG SAC") ¶¶ 39, 44.) LG then moved to dismiss the joint infringement claims a second
6    time, and the Delaware court denied the motion. (*Id.*, Dkt. No. 42 ("MTD II Tr.") at 17:18-18:3.)
7          Following the denial of the second motion to dismiss in *LG*, Sentius agreed to limit its
8    direct infringement allegations for method claims to "use" of the claimed methods. (*See* Dkt. No.
9    41-1 ("March 20, 2020 Letter") at 1-2.) Sentius filed a second amended complaint on March 26,
10   2020, alleging that Apple infringes the asserted method claims "by using the Accused Apple
11   Products without authority in the United States." (Dkt. No. 37 ("SAC") ¶ 49.) For claim 62 of the
12   '633 Patent, the SAC alleges that Apple practices the claimed method "via software instructions
13   used by the Accused Apple Products that execute the recited method steps." (*See id.* ¶¶ 35-46.)
14   For example, the SAC alleges that Apple practices the step of "selecting a discrete portion" via
15   "software instructions used by Accused Apple Products that receive a user input (such as by the
16   user 'clicking') on a given misspelled word [] to select that indicated misspelled word for further
17   processing." (*Id.* ¶ 41.) For claim 1 of the '985 Patent, the SAC alleges that Apple performs the
18   "syndicating" step by transmitting spell check dictionary files to the accused devices and the
19   remaining steps through "Accused Apple Products [that] utilize software instructions" to perform
20   the step. (*See id.* ¶¶ 57, 58-61.)
21         In addition to these allegations, the SAC also alleges that Apple is responsible for any
22   infringing acts of its users because it "directs and/or controls the user's performance of those acts
23   via the design of the software provided in the" accused products. (*Id.* ¶ 70.) Specifically,
24   "Apple's design of the accused functionality utilized by these products and system allows the user
25   [to] indicate which highlighted word or phrase he or she wishes to see the external reference
26   materials for (spelling or grammar suggestions) by clicking on the red squiggly line below the
27   word or phrase before they are displayed." (*Id.*)
28

## II.   LEGAL STANDARD

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## III.   DISCUSSION

Apple moves to dismiss Sentius' method claim direct infringement allegations on the ground that selling software alone does not constitute direct infringement. Apple also moves to dismiss Sentius' joint infringement claims—the allegations that Apple is responsible for any steps its users perform—on the ground that Sentius fails to allege that Apple exercises "direction and control" over its users. The Court considers each issue in turn.

### A.   Direction Infringement of Method Claims

Direct infringement of a method claim occurs "where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). Because methods cannot be sold in the same way as devices, the sale of a product for performing a claimed method does not constitute direct infringement. *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012). Similarly, sale of software that, when executed, performs the claimed method does not directly infringe. *Ricoh Co., Ltd. v. Quanta Comp. Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008).

4

In *Ricoh*, the Federal Circuit considered whether software constitutes a "process" under section 271(a), such that its sale directly infringes a method claim. *Id*. at 1334-35. In deciding the question in the negative, the court found that "software is not itself a sequence of actions, but rather is a set of instructions that directs hardware to perform a sequence of actions." *Id*. at 1335 (citing *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 447 (2007)). Thus, just as providing instructions for engaging in infringing use does not constitute direct infringement, selling software that performs a claimed method does not directly infringe a method claim. *See id*. at 1335, 1243 (finding that sale of software that instructs hardware to perform the claimed method creates a material dispute as to inducement, but not direct infringement); *cf. Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1336 (Fed. Cir. 2019) (affirming jury verdict of inducement where company provided kits along with instructions for using those kits to infringe method claim).

The Federal Circuit extended *Ricoh* in *Ericsson, Inc. v. D-Link Systems, Inc.*, where it found no direct infringement for sale of end-user products that perform the entire claimed method. 773 F.3d 1201, 1221 (Fed. Cir. 2014). In reversing the district court, which had relied on *SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319 (Fed. Cir. 2010),[1] the Federal Circuit explained: "our decision in *SiRF* did not create liability whenever an alleged infringer sells a product that is capable of executing the infringing method." *Id.* at 1221. Instead, *SiRF* was limited to cases where some steps are "automatically performed by equipment controlled by [the accused infringer]." *Id*. at 1221-22. By contrast, "*none* of our decisions have found direct infringement of a method claim by sales of an end user product which performs the entire method." *Id*. at 1222 (emphasis added). Thus, in *Ericsson*, because "all of the steps of a method .

---

[1] In *SiRF*, the court found that an accused infringer who performed some steps of a method directly and sold GPS receivers that performed the remaining steps automatically directly infringed a method claim. *See* 601 F.3d at 1329-31. Further, it found that although the users of the GPS receivers had to enable the accused functionality, the steps were performed automatically after enablement without possible modification by the user. *Id*. Relying on *SiRF*, the district court in *Ericsson* confirmed the jury's finding of direct infringement "if [D-Link's] products automatically perform the disputed steps without user modification." 773 F.3d at 1219-20.

5

1  . . are performed on the end product, which is controlled by a third party," and "there are no steps
2  automatically performed by equipment controlled by D-Link," there is no direct infringement.[2]  *Id*.
3     Sentius urges the Court to interpret *Ericsson* narrowly as holding that selling a product
4  capable of infringement does not create direct infringement.  The "capability" holding, however,
5  relates to a different part of the opinion that addresses system claims, not method claims.
6  *Compare Ericsson*, 773 F.3d at 1216-17 (system claims), *with id*. at 1219-22 (method claims).
7  Sentius also maintains that a product can infringe where the claimed method steps are performed
8  on an end-user product without modification.  The Court disagrees.  *Ericsson* expressly reversed
9  the district court reasoning that "because the accused products perform[] the claimed method when
10 operated by D-Link's customers without any modification, a finding of direct infringement was
11 justified."  *Id*. at 1220.  Moreover, Ericsson made the exact argument urged by Sentius, asserting
12 that "D-Link designs the accused products to perform the method steps automatically whenever
13 the products are used."  *Id*.  That automatic performance did not bar a holding of noninfringement.
14 Accordingly, under *Ericsson*, the dispositive inquiry is not automatic performance, but control
15 over the device:  if the accused infringer controls the equipment (or the user) that performs any
16 claimed step, it may be liable for direct infringement, but if the end user controls the device that
17 performs the entire method, no direct infringement can be found.[3]
18    Turning to the allegations in this case, Sentius accuses two sets of products:  Apple iOS
19 Devices, such as Apple iPhones, and certain online applications, such as iCloud Keynote.  (SAC
20 ¶¶ 13-14.)  Apple plausibly argues that the Apple iOS Devices are end-user products controlled by
21 the customers.  The allegations for the online applications are more complicated.  The SAC alleges

---

[2] Sentius notes the jury instruction issue in *Ericsson* but misreads its relevance.  The failure to instruct the jury that "D-Link could directly infringe a method claim if the accused products were used to execute the patented step" *supported* the infringement verdict because it showed that there was no legal error.  *See* 773 F.3d at 1222.  The court ultimately affirmed the verdict based on indirect infringement, which the jury did not distinguish.  *See id*. at 1221-22.

[3] Sentius cites *WiNet Labs LLC v. Apple Inc.*, No. 5:19-cv-02248-EJD, 2020 WL 409012, at **4-5 (N.D. Cal. Jan. 24, 2020), which interpreted *Ericsson* to focus on automatic performance.  For the reasons stated in this Order, the Court respectfully disagrees.  *Cf Adaptix, Inc. v. Apple, Inc.*, 78 F. Supp. 3d 952, 957 (N.D. Cal. 2015) ("[W]hat is relevant is whether any [] Defendant supplying a handset programmed to perform at least one step may be said to have performed or controlled any others.").

6

1    that the online applications "are online software platforms" that are "maintained on Apple servers
2    and are transmitted by Apple to user computers for operation thereon." (*Id*. ¶¶ 15-16.) Drawing
3    all inferences in favor of plaintiff, the Apple iOS Devices are end user products, but the Apple
4    online applications are divided between equipment controlled by Apple (servers) and equipment
5    controlled by the end users (user computers).

6    Sentius cites three parts of the SAC to allege infringement of the '633 Patent method
7    claims. First, Sentius cites paragraph 17, which states that "Apple has directly infringed the
8    method claims by using the method steps via software provided in the Accused Apple Products to
9    execute the accused functionality" and "by designing software to carry out the method steps via
10   the accused functionality." (*Id*. ¶ 17.) The first allegation is insufficient. Merely providing
11   software to an end-user device does not constitute "use" of that device. Instead, use of a method
12   requires that (1) Apple actually operates the device to perform the method, (2) at least one step of
13   the method is performed on equipment controlled by Apple (per *SiRF*), or (3) Apple exercises
14   direction or control over the users. The second allegation is also insufficient. Under *Ricoh*,
15   designing software is equivalent to drafting instructions—the user who executes the instructions,
16   not their creator, is liable for direct infringement.

17   Second, Sentius cites paragraph 35, which states that "Apple has practiced the claimed
18   method via software instructions used by the Accused Apple Products that execute the recited
19   method steps." (*Id*. ¶ 35.) For similar reasons as paragraph 17, this allegation is insufficient.
20   Devices do not use a method for purposes of patent infringement—people do. Accordingly, the
21   use of a method by a device creates liability for the party that controls the device, not its seller.
22   Finally, Sentius cites paragraphs 36 through 46, which provide specific allegations for each step of
23   claim 62. (*Id*. ¶¶ 36-46.) In each case, Sentius alleges that "Apple has practiced this step via
24   software instructions used by the Accused Apple Products that" perform the step. (*Id*.) For the
25   reasons stated above, these allegations are insufficient. Under *Ricoh*, software represents
26   instructions for executing a process—not the process itself. Thus, "practicing [a] step via software
27   instructions" does not state claim for direct infringement unless Apple actually operates the
28   accused products that execute the software.

7

1    Accordingly, the Court **GRANTS** Apple's motion to dismiss Sentius' direct infringement

2    allegations for the method claims of the '633 Patent.[4]

### B.    Joint Infringement of Method Claims

To state a claim for joint infringement, a plaintiff must allege facts "sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction or control' over the others' performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party."[5]  *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (citing *Akamai*, 797 F.3d at 1022).  The requisite "direction or control" requires that "an accused infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method" and "establishes the manner or timing of that performance."  *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1351 (Fed. Cir. 2018) (quoting *Akamai*, 797 F.3d at 1023).  The precise nature of the "conditioned benefit" remains unclear.  The Federal Circuit has found that "mere guidance or instruction is insufficient to show 'conditioning,'" but that neither a legal obligation nor an "unavoidable technological prerequisite to participation" is required.  *See Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1365-67 (Fed. Cir. 2017).

The SAC alleges that "Apple makes the benefits of the accused functionality conditioned on the user's performance of [the claimed steps] and establishes the manner or timing of that performance through its design of the operation of the" accused products.  (SAC ¶¶ 50, 70.)  Although this appears to merely restate the legal standard, Sentius argues in its brief that Apple conditions the user's receipt of the benefit of spelling or grammar suggestions on clicking on the "red squiggly line" to select the misspelled word.  In other words, the user cannot see the spelling

---

[4] Sentius emphasizes the low pleading standard for patent infringement claims, which typically requires only general notice of the overall infringement allegations.  *See Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1112 (N.D. Cal. 2016).  However, even under the liberal standard of "notice pleading," the complaint cannot state a legally deficient theory and survive dismissal.  *See Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (focusing on "legal feasibility" of a claim).

[5] Joint infringement is a variation of direct infringement where "all steps of a claimed method are . . . attributable to a single entity."  *Akamai*, 797 F.3d at 1022.

1   suggestions unless she selects a word, as required to practice the methods of the '633 Patent.
2   Sentius also argues in its brief that Apple establishes the manner (clicking the red squiggly line)
3   and timing (when the line appears on the user's screen) of the performance.  Apple contends that
4   such allegations cannot satisfy "conditioning a benefit" because the alleged benefit stems from the
5   functionality itself.  As Apple argues, *any* user interaction with software creates joint infringement
6   under Sentius' theory because users presumably derive some benefit from using the software.

7   The Court need not resolve this dispute—Sentius fails to state a claim even under its own
8   theory.  The SAC nowhere alleges that the benefits of spell check suggestions are conditioned on
9   the user selecting a misspelled word.  Instead, the paragraphs Sentius cites merely state that
10  "Apple's design of such software allows the user to indicate which highlighted word or phrase he
11  or she wishes to see the external reference materials for (such as spelling or grammar suggestions)
12  by clicking on the red squiggly line below the word or phrase before they are displayed." (*Id.*)
13  The word "allow" does not suggest conditioning a benefit.  On the contrary, it suggests that the
14  user freely selects a term without "direction or control" from Apple.  The failure to state this
15  aspect of joint infringement is puzzling, since Sentius appear to have adequately alleged the same
16  theory in the Delaware litigation.  There, Sentius alleged that LG "require[s] the user to click on
17  the misspelled word (identified by LG by having the LG smartphone display the word with a red
18  line underneath it) if the user wishes the LG Smartphone display [to] suggest[] spelling
19  corrections." (*See LG* SAC ¶¶ 39, 44.)  Regardless of Sentius' reasons for not alleging the same
20  facts here, its current allegations fail to state a claim for joint infringement.[6]

21  Apple additionally moves to dismiss because Sentius fails to allege a relationship between
22  Apple and end users and to identify the steps performed by the user.  A relationship does not
23  appear to be required for joint infringement.  As stated in *Nalco*, the "common thread" of joint
24  infringement cases is that "no matter the relationship between the parties," a third party can only
25  obtain certain benefits by performing steps identified by defendant and "does so under the terms

---

[6] Sentius use of "allowed" is yet more puzzling because the FAC used the word "required." Although Sentius claims that the word choice is inconsequential, the Court counsels that should Sentius file an amended complaint, it should clarify the allegations.

9

prescribed by the defendant."[7]  883 F.3d at 1352.  However, Apple's second argument has merit.  The Court cannot determine based on Sentius' allegations which limitation of claim 1 of the '985 Patent Sentius alleges requires user input.  Although Sentius argues that claim construction is needed to determine if user actions are required for these claims, the SAC allegations are simply misaligned from the language of claim 1:  while the SAC identifies user selection of a misspelled word as conditioned on a benefit, claim 1 has no such requirement.  Accordingly, Sentius' '985 Patent claims are dismissed for this additional reason.

### C.   Leave to Amend

Leave to amend is "freely granted" when "justice so requires."  Fed. R. Civ. P. 15(a)(2).  "In the absence of any apparent or declared reason" for denying leave, "the leave sought should, as the rules require, be 'freely given.'"  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Here, Apple argues that Sentius already made three unsuccessful attempts to plead its claims and unduly delayed addressing the alleged deficiencies.  However, it articulates no real prejudice from the delay.  The Court cannot conclude that amendment would be futile—Sentius' *LG* allegations suggest that it may yet plead divided infringement.  Moreover, Sentius may yet allege that the accused products perform some steps on equipment controlled by Apple (e.g., the servers).  Accordingly, leave to amend is **GRANTED**.[8]

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Apple's partial motion to dismiss Sentius' direct infringement allegations for the method claims of the '633 Patent and joint infringement allegations for the method claims of the '633 and '985 Patents **WITHOUT PREJUDICE.**  Sentius may

---

[7] Although *Lyda* cited a lack of a relationship as a reason for dismissal, it did so on the unique facts where the accused infringer was twice removed from the parties performing the claimed steps.  *See* 838 F.3d at 1340.  There, the patentee alleged that the accused infringer exercised direction and control over an independent contractor who in turn exercised direction and control over third-parties who allegedly performed the method steps.  *Id*.

[8] Sentius indicates that it will amend the complaint to add allegations regarding Apple's software.  In the Court's view, software allegations are not sufficient to allege use of a method claim.  However, Sentius may stand on its papers in lieu of amendment.

10

file an amended complaint within twenty-one days of this Order.  Apple shall file a response within twenty-one days of the filing of an amended complaint.

This Order terminates docket number 41.

**IT IS SO ORDERED.**

Dated: June 2, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**