United States District Court<br>Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SENTIUS INTERNATIONAL, LLC,**<br><br>          Plaintiff**,**<br><br>     vs.<br><br>**APPLE INC.,**<br><br>          Defendant**.** | CASE NO.  4:20-cv-00477-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART APPLE INC.'S PARTIAL MOTION TO DISMISS THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>Re: Dkt. No. 61 |

Plaintiff Sentius International, LLC ("Sentius") brings this patent infringement action against defendant Apple Inc. for alleged infringement of two of its patents, U.S. Patent No. RE43,633 (the "'633 Patent") and 7,672,985 (the "'985 Patent").  On June 2, 2020, the Court granted Apple's partial motion to dismiss on the grounds that Sentius failed to state a claim for direct infringement of the '633 Patent method claims and joint infringement of the '633 and '985 Patent method claims, with leave to amend.  (Dkt. No. 55 ("Order").)  On June 23, 2020, Sentius filed an amended complaint, continuing to assert direct and joint infringement of the asserted method claims.  (Dkt. No. 58 ("TAC").)

Now before the Court is Apple's partial motion to dismiss the third amended complaint. (Dkt. No. 61 ("MTD").)  Having carefully reviewed the pleadings and submitted papers, and for the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** defendant's partial motion to dismiss.[1]

## I.     BACKGROUND

The background giving rise to this action is well-known, and the Court does not repeat it here.  (*See* Order at 1:21-3:27.)  In brief, Sentius asserts infringement of the '633 Patent method

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the motion appropriate for resolution without oral argument.

claims.  (TAC ¶ 20.)  Sentius accuses certain Apple products (such as iPhones and MacBooks) as well as Apple online applications (Pages and Keynote) through their spellcheck functionality.  (*Id*. ¶¶ 11-17.)  Specifically, Sentius alleges that these products and applications practice the claimed methods when a user selects a misspelled word to see spelling suggestions.  (*Id*. ¶ 12.)

Previously, Sentius alleged that Apple uses the '633 Patent methods through software that automatically executes the claimed steps in response to user selection.  (*See* Dkt. No. 37 ("SAC") ¶¶ 35-46.)  The Court dismissed these allegations because Federal Circuit precedent considers software to be instructions, such that party that operates the device to execute the software (the user) infringes a method claim, as opposed to the party that sells the device together with the software (Apple).  (Order at 4:21-8:2.)  In the third amended complaint, Sentius continues to assert infringement through software, but also alleges that "Apple and other users . . . have each respectively operated devices" to execute software that performs the claimed methods.  (TAC ¶¶ 22-33.)  Sentius also alleges that Apple operated these devices to execute the methods "on servers, computers and devices controlled by Apple."  (*Id*. ¶ 20.)

Separately, Sentius asserts a "joint infringement" theory by alleging that Apple "is directly responsible for any infringing acts of its users" because it conditions a benefit of the spell check functionality on user performance of claimed steps.  (*Id*. ¶¶ 34, 42.)  The joint infringement theory is relevant to both the '633 Patent—the claims of which require "selecting a discrete portion of an image of the textual source material" (i.e., the misspelled word)—and the '985 Patent, the claims of which require linked content to be displayed "based upon user interaction with at least a portion of the one or more source documents."  (*Id*. ¶¶ 28, 59, 61.)  Although the Court has previously dismissed these claims, it did so on the grounds that Sentius' allegations did not reflect its theory of infringement and did not consider the merits.  (Order at 9:7-20.)

In response to Apple's current motion, Sentius agrees not to pursue joint infringement for the '633 Patent, but asserts, in its place, that Apple is vicariously liable for its users' operation of the accused products.  (Dkt. No. 63 ("Opp.") at 1:19-25.)  Although the third amended complaint does not allege vicarious infringement, the Court considers the issue to determine whether amendment would be futile.

II.     **LEGAL STANDARD**

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

III.    **DISCUSSION**

Apple moves to dismiss Sentius direct and joint infringement claims for the '633 Patent and joint infringement claims for the '633 and '985 Patents. In light of Sentius' representations that it will no longer pursue joint infringement claims for the '633 Patent, the Court considers the three remaining issues: (1) direct infringement of the '633 Patent, (2) vicarious infringement of the '633 Patent, and (3) joint infringement of the '985 Patent.[2]

A.     **Direct Infringement ('633 Patent)**

Direct infringement of a method claim occurs "where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). As stated in the Court's Order, direct infringement of a

---

[2] For ease of reference, the Court adopts the parties' categories and refers to divided infringement as "joint" infringement. Nevertheless, the Court notes that divided infringement is a species of direct infringement and that "joint" infringement is, at least in theory, broader than divided infringement. *See Akamai*, 797 F.3d at 1022; *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001); *cf.* Restatement (Second) Torts § 875 (indivisible harm).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    method claim requires that "(1) Apple actually operates the device to perform the method, (2) at

2    least one step of the method is performed on equipment controlled by Apple (per *SiRF*), or (3)

3    Apple exercises direction or control over the users."  (Order at 7:11-14.)  For example, in

4    *Ericsson, Inc. v. D-Link Systems, Inc.*, the court held that device makers whose products

5    automatically performed a claimed method were not directly liable because all of the steps were

6    performed on user-controlled devices and defendants neither performed the steps nor exercised

7    direction or control over the users.  773 F.3d 1201, 1221-22 (Fed. Cir. 2014).

8         Here, Sentius alleges that each step of the claimed methods was performed when "Apple

9    and other users of the accused functionality . . . each respectively operated devices, such as the

10   Accused Products, executing the software that performed [the step]."  (TAC ¶¶ 23-33.)  Sentius

11   also alleges that the claimed methods were executed on "servers, computers and devices controlled

12   by Apple," but clarifies that this refers to Apple's own use of the devices.  (*Id*. ¶ 20; Opp. at 6:6-

13   13.)  Sentius thus alleges two theories of direct infringement:  (1) direct infringement through

14   Apple's own operation of the devices, and (2) direct infringement through direction and control

15   over users who operate the devices.

16        As to the first theory, Sentius states a viable claim.  While Apple undoubtedly designs its

17   products for other users, the Court finds it plausible that Apple may have tested its products or

18   otherwise executed the relevant methods in the course of product development and support.  *See,*

19   *e.g.*, *Carnegie Mellon U. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1296-97 (Fed. Cir. 2015)

20   (upholding jury verdict of direct infringement based on infringer's simulation of accused feature

21   operation during development); *Finjan, Inc. v. Sophos, Inc.*, 244 F. Supp. 3d 1016, 1046 (N.D.

22   Cal. 2017) (affirming jury verdict of direct infringement based on substantial evidence that

23   defendant tested its products in the United States).  *But see Packet Intelligence LLC v. NetScout*

24   *Sys., Inc.*, 965 F.3d 1299, 1314-15 (Fed. Cir. 2020) (reversing damages award based on device

25   sales which was not tied to the internal use of the claimed methods).

26        With regard to the second theory, Sentius argues that Apple directs and controls users'

27   actions because Apple conditions the benefits of spell check on user performance of the claimed

28   methods and establishes the manner and timing of that performance.  (TAC ¶ 34.)  This is the

4

standard for joint infringement. *See Akamai*, 797 F.3d at 1023 (expanding attribution principles for joint liability to include "condition[ing] participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establish[ing] the manner or timing of that performance'). Apple thus argues that because Sentius abandoned its joint infringement claim, the "conditioned benefit" test is no longer applicable. Sentius disagrees and contends that the Federal Circuit intended to expand principles of attribution in *Akamai* to allow for direct liability where a third party performs all steps of a claimed method based on the defendant's conditioned benefit and control.

Sentius is correct. In *Nalco Company v. Chem-Mod, LLC*, an accused infringer allegedly practiced a method to remove mercury pollutant from power plant gas. 883 F.3d 1337, 1342-43 (Fed. Cir. 2018). The patentee alleged "three ways" in which all steps of the method could be attributable to defendants, namely they (i) operated the process at a power plant, (ii) directed and controlled operation of a test facility that carried out all steps, and (iii) carried out all steps during testing. *Id*. at 1350. The district court dismissed the claims because the patentee "failed to allege that any Defendant is directly responsible for performing all method steps," but the Federal Circuit reversed. *Id*. at 1351. The court noted that the testing facility was alleged to "obtain[] monetary benefits for performing the test requisitioned by Defendants" and that defendants "controlled all aspects of the power plant operations during the test." *Id*. at 1352-53. In these circumstances, it "d[id] not matter" whether the party conducting the test was the defendant, a non-defendant power plant, or a facility performing pilot tests—all three were directed to perform all steps of the method by the defendants. *Id*. at 1353.

Accordingly, a defendant may be directly liable for infringing a claimed method where a third party carries out all steps of the method to obtain a benefit conditioned by the defendant and the defendant controls the manner or timing of that performance. *Id*. at 1350; *Akamai*, 797 F.3d at 1023. Apple's cases to the contrary, *Finjan*, 244 F. Supp. 3d at 1044, and *Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963, 972-73 (N.D. Cal. 2018), were decided before *Nalco* and do not control. *See Sound View Innovations, LLC v. Hulu, LLC*, No. LA CV17-04146 JAK (PLAx), 2019 WL 2619639, at **9-10 (C.D. Cal. Apr. 30, 2019).

Nevertheless, the Court finds that Sentius fails to state a claim under the "conditioned benefit" test for direction and control.  Each Federal Circuit case under this standard involves some version of offline control and conditioned benefit over users.  In *Akamai*, the defendant imposed contractual requirements for users to perform certain steps to use its service.  797 F.3d at 1024.  In *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, doctors conditioned patient treatment on their taking of folic acid.  845 F.3d 1357, 1366 (Fed. Cir. 2017).  In *Travel Sentry, Inc. v. Tropp*, the defendant had a "memorandum of understanding" with the TSA to perform certain steps.  877 F.3d 1370, 1383-84 (Fed. Cir. 2017).  And in *Nalco*, the defendant apparently paid a test facility to perform the method.  883 F.3d at 1353.  Each of these cases involved offline or "real world" control and conditioning—not control through a device.

By contrast, the Court is aware of no case where software functionality alone satisfied the "conditioned benefit" test.  Although the Federal Circuit warned against limiting the standard to legal obligations and technological prerequisites, it has repeatedly stated that "mere guidance or instruction is insufficient" to show conditioned benefit.  *Eli Lilly*, 845 F.3d at 1367; *Travel Sentry*, 877 F.3d at 1379.  Under governing precedent, software is exactly that:  instructions.  *See Ricoh Co., Ltd. v. Quanta Comp. Inc* 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("[S]oftware is not itself a sequence of actions, but rather it is a set of instructions that directs hardware to perform a sequence of actions."); *Fantasy Sports Props., Inc. v. SportsLine.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002) ("Software is a set of instructions, known as code, that directs a computer to perform specified functions or operations."); *see also Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 447 (2007) (relying on *Fantasy Sports* to equate software with instructions).

Moreover, the Patent Act provides different provisions for infringement through supply of a device for infringement.  *See* 35 U.S.C. § 271.  Section 271(c) states that "[w]hoever offers to sell or sells . . . a material or apparatus for use in practicing a patented process . . . shall be liable as a contributory infringer."  Section 271(b) provides liability for "active inducement," which includes providing instructions for infringement.  *See Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1336 (Fed. Cir. 2019).  The Federal Circuit has consistently analyzed provision of infringing devices under these standards, not the direct infringement of section 271(a).  *See, e.g., Mirror*

United States District Court
Northern District of California

1  *Worlds, LLC v. Apple Inc.*, 692 F.3d 1352, 1360 (Fed. Cir. 2012); *Fujitsu Ltd. v. Netgear Inc.*, 620

2  F.3d 1321, 1326-32 (Fed. Cir. 2010); *Ricoh*, 550 F.3d at 1341; *see also Commil USA, LLC v.

3  Cisco Sys., Inc.*, 575 U.S. 632 (2015); *cf. Hilgraeve Corp. v. Symatec Corp.*, 265 F.3d 1336, 1342

4  n.2 (Fed. Cir. 2001) ("While the parties, and the district court's decision, speak of the accused

5  devices as infringing, more properly the allegation is that the operation of the devices directly

6  infringes the method claims at issue, or that that the sale of the devices induces customers to

7  infringe the method claims.").

8  　　　Thus, "in the context of the facts presented," the Court concludes that Sentius fails to state

9  a claim for direct infringement based on allegations of direction and control through the provision

10  of infringing software to end-user devices.  Sentius never alleges that users could only obtain the

11  benefit of the sold devices by performing the claimed method.  On the contrary, Sentius expressly

12  alleges that users may obtain spell check benefits through other means.  (TAC ¶ 12.)  Sentius also

13  does not allege that Apple has the right and ability to control users' infringement after the devices

14  are sold.  *See Travel Sentry*, 877 F.3d at 1385 (citing *Metro-Goldwyn-Mayer Studios Inc. v.

15  Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).  Ultimately, Sentius may convince the Federal Circuit

16  that software functionality should satisfy the "conditioned benefit" test.  But absent explicit

17  guidance, the Court declines to expand direct liability to hold parties that provide software for

18  performing a method to end-user devices strictly liable.

19  　　　Accordingly, Sentius states a claim for direct infringement based on Apple's own

20  operation of the accused devices, but not for direction or control over users who operate the

21  devices.

22  　　　**B.　　　Vicarious Infringement ('633 Patent)**

23  　　　Patent infringement is a tort action.  *Wordtech Sys., Inc. v. Integrated Network Sol., Inc.*,

24  609 F.3d 1308, 1313 (Fed. Cir. 2010).  Patent law thus presumptively incorporates vicarious

25  liability principles.  *See Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("[W]hen Congress creates a

26  tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules

27  and consequently intends its legislation to incorporate those rules."); *see also Sony Corp. of Am. v.

28  Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984) (reading vicarious liability into the

1    Copyright Act because "vicarious liability is imposed in virtually all areas of the law").[3]

2         Under traditional vicarious liability principles, a principal or employer is liable for its

3    agent's or employee's torts. *Meyer*, 537 U.S. at 285.  In copyright law, vicarious liability has also

4    been imposed on a party that "profit[s] from direct infringement while declining to exercise a right

5    to stop or limit it." *Grokster*, 545 U.S. at 930.  This principle is "an outgrowth" of *respondeat*

6    *superior* based on an analogy to "dance hall" cases that found operators of entertainment venues

7    vicariously liable for infringing performances in their venues. *Fonivisa, Inc. v. Cherry Auction,*

8    *Inc.*, 76 F.3d 259, 261-62 (9th Cir. 1996).  Imposing liability in these circumstances encourages a

9    party that has the right and ability to police infringement to do so, and thus "place[s] responsibility

10   where it can and should be effectively exercised." *Shapiro, Bernstein & Co. v. H.L. Green Co.*,

11   316 F.2d 304, 308 (2d Cir. 1963).

12        Sentius now argues that the Federal Circuit expanded vicarious liability further in *Akamai*

13   to find a party liable whenever it conditions a benefit and controls another party's infringement.

14   797 F.3d at 1023.  However, as *Akamai* expressly noted, vicarious liability "is a misnomer" in that

15   context. *Id*. at 1022 n.2.  *Akamai* had expanded principles of attribution for purposes of *direct*

16   infringement of a method claim. *See id.* at 1022.  Although it did so using "general principles of

17   vicarious liability," the doctrines remain distinct. *Id.*  Vicarious infringement is a secondary

18   liability doctrine based on "an alleged infringer['s] [liability] for a third party's commission of

19   infringement." *Id*. at 1022 n. 2.  Joint infringement is a direct liability doctrine based on "an

20   alleged infringer [being] responsible for method steps performed by a third party." *Id.*  The

21   distinction is slim to nonexistent where vicarious liability is a viable theory, but has an impact

22   where vicarious liability is not available—most obviously, where there is no direct infringement

23   because no party performs all of the steps of a method claim.

24   _____

25   [3] The lines between direct, contributory, and vicarious infringement have not always been "clearly drawn." *Sony*, 464 U.S. at 435 n.17.  Both the Supreme Court and the Federal Circuit

26   have occasionally referred to contributory infringement as "vicarious" infringement. *See id.* at 439-40; *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1273 (Fed. Cir. 2004).

27   However, at least in the patent context, that is a misnomer.  Contributory infringement is expressly defined in 35 U.S.C. § 271(c) and requires knowledge of the patent; vicarious infringement stems

28   from common law principles and does not. *See Grokster*, 545 U.S. at 930 n.9; *Shapiro*, 316 F.2d at 307; *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022-23 (9th Cir. 2001).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Accordingly, Sentius cannot state a claim for vicarious infringement based on the

2  "conditioned benefit" test of *Akamai*.  Nor do the rest of the allegations state a claim for vicarious

3  infringement because Sentius fails to allege an agency relationship between Apple and its users or

4  that Apple has the right and ability to police users' direct infringement.  *See Centillion Data Sys.,*

5  *LLC v. Qwest Commn's Int'l, Inc.*, 631 F.3d 1279, 1287 (Fed. Cir. 2011) (no vicarious liability

6  where "it is entirely the decision of the customer whether to install and operate . . . software");

7  *Cross Medical Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311 (Fed. Cir.

8  2005) (no vicarious liability without an agency relationship); *Acceleration Bay LLC v. Activision*

9  *Blizzard, Inc.*, 324 F. Supp. 3d 470, 482 (D. Del. 2018) (rejecting vicarious liability where

10  customers chose whether to install software); *Joao Control & Monitoring Sys. Of Cal., LLC v.*

11  *Sling Media, Inc.*, No. C-11-6277 EMC, 2012 WL 3249510, at *7-8 (N.D. Cal. Aug. 7, 2012) (no

12  vicarious liability based on customer relationship where defendant was not the "mastermind" who

13  controls the infringement).

14    Accordingly, the Court finds that amendment to the complaint to add vicarious

15  infringement claims based on Sentius' factual allegations would be futile.

16    **C.    Joint Infringement ('985 Patent)**

17    Joint infringement stems from the principle that "a method patent is not directly infringed .

18  . . unless a single actor can be held responsible for the performance of all steps of the patent."

19  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 924 (2014).  Where multiple

20  parties are involved in performing the method steps, all steps must be ultimately attributable to the

21  direct infringer.  *Akamai*, 797 F.3d at 1022.  A third-party's performance of a step is attributable to

22  the alleged infringer if (1) the third-party acts as the infringer's agent, (2) the parties form a joint

23  enterprise, (3) the alleged infringer contracts with the third-party to perform the steps, or (4) the

24  alleged infringer "conditions participation in an activity or receipt of a benefit upon performance

25  of a step or steps . . . and establishes the manner or timing of that performance."  *Id.* at 1023.

26    Here, Sentius alleges that Apple performs the step of "syndicating one or more data objects

27  . . . to one or more remote computers" from its own servers and conditions users' performance of

28  the remaining steps on their end-user devices.  (TAC ¶¶ 43-48, 51-59.)  These allegations state a

claim for direct infringement under *SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319, 1331 (Fed. Cir. 2010).  (*See* Order at 5 n.1, 7:11-14.)  Although *SiRF* rejected the district court finding of joint infringement, the Court cannot conclude that Sentius fails as a matter of law in alleging joint infringement, in addition to or in the alternative to direct infringement.  *See SiRF*, 601 F.3d at 1229.  In particular, while the claims in *SiRF* were drawn to a single actor, and did not require a third-party to perform any step, claim 21 of the '985 Patent requires user interaction.  *Id.*; (TAC ¶ 59).  Accordingly, Sentius states a claim for joint infringement.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Apple's partial motion to dismiss with respect to allegations of direct infringement based on direction and control over users, but **DENIES** the motion with respect to allegations of Apple's own operation of the accused devices, as well as joint infringement of the '985 Patent.  Apple shall answer the complaint within twenty-one (21) days.  The Court further **SETS** a case management conference for November 23, 2020, at 2:00 p.m. Instructions for a Zoom link will be docketed a few days before the hearing.

This Order terminates docket number 61.

**IT IS SO ORDERED.**

Dated: October 15, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**